*264 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
| TThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Frederick A. Blanche, III, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.
PROCEDURAL HISTORY
In 2005, the ODC filed one count of formal charges against respondent. The matter proceeded to a formal hearing on the merits, following which a recommendation of discipline was made by the hearing committee. In January 2008, the disciplinary board filed its recommendation in our docket number 08-B-0107. Prior to any action by the court in that matter, however, the ODC filed a petition seeking respondent’s transfer to disability inactive status, or alternatively, interim suspension for threat of harm to the public. Based upon the information presented in the ODC’s petition, we ordered that respondent be suspended on an interim basis, effective immediately. We also remanded 08-B-0107 to the disciplinary board for consolidation with investigative matters which were then pending, and directed the board to issue a single recommendation of discipline encompassing all disciplinary 12matters involving respondent. In re: Blanche, 08-0107, 08-0257 (La.2/13/08), 974 So.2d 664.
In August 2008, the ODC filed a second set of formal charges against respondent. Following a hearing before a hearing committee, the committee filed its report with the disciplinary board. The board then consolidated the two sets of formal charges, and in May 2010, filed in this court a single recommendation of discipline encompassing both sets of formal charges.
UNDERLYING FACTS

05-DB-085

The Babin Matter

In the fall of 2003, Brandy Babin received notice that her home was scheduled to be sold at a sheriffs sale on January 14, 2004. In November 2003, Mrs. Babin retained respondent to represent her in the matter. Assuring Mrs. Babin there was sufficient time to stop the sale, respondent recommended she file Chapter 13 bankruptcy and asked her to return with needed payroll documentation. Mrs. Babin returned to respondent’s office with the necessary paperwork in December 2003, at which time she also paid the bankruptcy filing fee. Despite the exigent circumstances, respondent failed to file the bankruptcy and did not review Mrs. Ba-bin’s paperwork until after her home was sold at the scheduled sheriffs sale.
*265 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client) and 1.4 (failure to communicate with a client). Respondent answered the formal charges and admitted that an employee of his office “dropped the ball,” however, he denied that he personally engaged in any | ^misconduct in his representation of Mrs. Babin. Respondent subsequently admitted to “practice deficiencies” in his “non-handling of Mrs. Babin’s case.... ” The matter then proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings consistent with the underlying facts set forth above. Based on these facts, the committee determined respondent violated the Rules of Professional Conduct as charged in the formal charges.
The committee determined respondent violated a duty owed to his client and the legal profession, and that his conduct, while negligent, resulted in actual injury to his client. The committee found the following aggravating factors present: vulnerability of the victim and substantial experience in the practice of law (admitted 1971). The committee found the following mitigating factors present: absence of a prior disciplinary record and remorse.
For his misconduct, the committee recommended respondent be suspended from the practice of law for three months, fully deferred, followed by a six-month period of supei'vised probation with conditions.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.

08-DB-065

Count I — The Bankruptcy Court Matter
Between April 2003 and May 2007, respondent practiced law in the United States Bankruptcy Court for the Middle District of Louisiana (hereinafter referred to |4as the “bankruptcy court”). During that time frame, respondent was the subject of show cause orders in some sixty-five different bankruptcy cases. The rules to show cause were premised upon respondent’s failure to pay filing fees, failure to comply with trustee requirements, failure to appear in court, and failure to file documents. Financial sanctions were also imposed against respondent on approximately thirty-seven occasions. In May 2007, the bankruptcy court suspended respondent from practice for a period of eighteen months, commencing June 29, 2007.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.3, 1.15 (safekeeping property of clients or third persons), 5.3 (failure to properly supervise a non-lawyer assistant), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count II — The Cruse Matter
On April 19, 2007, respondent filed a Chapter 13 bankruptcy proceeding for Worner Cruse. Prior to June 29, 2007, the effective date of respondent’s suspension from practice in the bankruptcy court, his law office prepared bankruptcy documents and pleadings for Mr. Cruse, which he filed pro se on July 6, 2007. On July 11, 2007, Mr. Cruse hired attorney Derren Johnson to represent him in the bankruptcy proceeding. Thereafter, without Ms. Johnson’s permission, respondent gave Mr. *266 Cruse legal advice about his bankruptcy and prepared an amended bankruptcy plan, which he gave to Mr. Cruse for Ms. Johnson to implement. On January 10, 2008, an order to show cause was issued in Mr. Cruse’s bankruptcy case ordering respondent to appear. Following the show cause hearing on February 13, 2008, respondent was | .^permanently barred from practicing in the bankruptcy court and from giving any legal advice in connection with a bankruptcy case before the court.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 4.2(a) (communication with a person represented by counsel), 5.3, 5.5(a) (engaging in the unauthorized practice of law), and 8.4(d).
Count III — The Brooks Matter
In July 2006, respondent filed a Chapter 13 bankruptcy petition for William Brooks. In November 2006, respondent was advised of errors in the bankruptcy plan which needed to be corrected; however, the ODC alleges respondent failed to timely make the necessary corrections, causing two scheduled hearings in the matter to be continued. The bankruptcy court also ordered respondent’s fee reduced by $250. In January 2007, Mr. Brooks’ bankruptcy case was dismissed. Thereafter, respondent faxed a motion for payment of attorney’s fees out of undistributed funds held by the trustee, praying for a fee of $999. In the motion, respondent claimed he complied with all of his obligations to Mr. Brooks but failed to mention the order reducing his attorney’s fee.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 5.3, 8.4(c), and 8.4(d).

Count IV— The Failure to Cooperate Matter

On April 8, 2008, respondent was personally served with a subpoena compelling him to appear before the ODC on April 17, 2008 to provide testimony and to produce documents relative to three pending investigations. Respondent failed to appear on that date.
RThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.4(a) (unlawfully obstructing another party’s access to evidence), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(d).
Count V — The Armstead Matter
In June 2006, respondent filed a Chapter 13 bankruptcy petition for Pamela Armstead, whom he also represented in a personal injury matter arising out of a December 2005 automobile accident. Respondent notified Travelers Insurance Company that he would be representing Ms. Armstead in her personal injury claim, but he did not list the claim in Ms. Arm-stead’s bankruptcy petition and had not obtained the required authorization from the bankruptcy trustee to handle Ms. Arm-stead’s personal injury matter. In August 2006, after the trustee learned of the personal injury claim, she sent respondent a sample of the motion required to obtain authorization to represent Ms. Armstead in that matter and to receive a fee. However, respondent failed to file the motion and settled Ms. Armstead’s personal injury claim without obtaining the required authorization. In December 2006, Travelers settled Ms. Armstead’s claim for a total of. $14,000. Ms. Armstead’s portion of the settlement was $11,794.54. Respondent *267 received the check from Travelers, gave Ms. Armstead $7,864 in cash, and retained $3,930.54 as his fee. Respondent did not deposit the settlement check into his client trust account. In January 2007, respondent obtained a $13,000 check from his mother and presented it to the trustee to be applied towards Ms. Armstead’s bankruptcy.
|7The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.3, 1.15, 3.4(c), 5.3, 8.4(c), and 8.4(d).
Respondent answered the formal charges in 08-DB-065 and generally denied any misconduct. However, he conceded there were “deficiencies that existed in his practice in 2006 and 2007,” which he admitted were prejudicial to the administration of justice in the bankruptcy court. He also admitted that he failed to cooperate with the ODC in its investigation, and that he “made a mistake” in handling Ms. Armstead’s settlement proceeds. Following the filing of respondent’s answer, the matter proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the committee made findings of fact and law, including the following:
In Count I, the committee determined that approximately sixty-five show cause orders were issued by the bankruptcy court during the time frame at issue in the formal charges, and that thirty-seven financial sanctions were levied against respondent. Respondent’s electronic password was ordered disabled specifically as a result of multiple declined charges pertaining to filing fees. Respondent missed multiple hearings and meetings in his clients’ cases, and his filings were frequently deficient in a variety of respects. Respondent displayed a pattern of neglect in a significant number of cases in bankruptcy court.
To assist him in his practice, respondent employed his wife, a non-lawyer, to handle bankruptcy filings. Personnel in the clerk’s office witnessed behavior in respondent’s wife indicative of an impairment. Respondent had actual or constructive | ^knowledge of his wife’s infirmity as well as the multiple instances of filing deficiencies. Based on these facts, the committee determined respondent violated Rules 1.1(a), 1.3, 5.3 and 8.4(d) in Count I. However, the committee found the alleged violations of Rules 1.15 and 8.4(c) were not proven by clear and convincing evidence.
In Count II, the committee determined respondent prepared an amended bankruptcy plan for Mr. Cruse while he was suspended from the practice of law in bankruptcy court. Respondent also communicated with Mr. Cruse about the substance of the bankruptcy matter while Mr. Cruse was represented by other counsel, Derren Johnson, without the approval of Ms. Johnson or the bankruptcy court. The committee acknowledged that respondent may have sincerely intended to help Mr. Cruse, but nonetheless, even if no harm occurred to Mr. Cruse, Ms. Johnson’s representation of him was adversely affected. As a result of respondent’s improper communication with Mr. Cruse, he was permanently disbarred from practicing in bankruptcy court. Based on these facts, the committee determined respondent violated Rules 4.2(a), 5.5(a), and 8.4(d) in Count II. The committee found the alleged violation of Rule 5.3 was not proven by clear and convincing evidence.
In Count III, the committee determined that many of the problems with Mr. Brooks’ case were not the result of respondent’s actions but rather Mr. Brooks’ actions. The committee found that there *268 were several deficiencies in the bankruptcy-schedules filed in Mr. Brooks’ case, but that these were promptly corrected. Respondent also attended multiple court hearings with Mr. Brooks and filed amended plans in an attempt to help Mr. Brooks through the bankruptcy process. The dismissal of Mr. Brooks’ bankruptcy was directly related to Mr. Brooks’ failure to pay his child support obligations and, thus, prevented confirmation of his plan as ^drafted by respondent. Under the circumstances, the committee determined the rule violations alleged in Count III of the formal charges were not proven by clear and convincing evidence.[1]
In Count IV, respondent admitted he failed to appear pursuant to a subpoena and thus failed to cooperate with the ODC in its investigation, as charged.
In Count V, respondent defended his simultaneous representation of Ms. Arm-stead in the bankruptcy matter and in her personal injury matter, claiming he was unaware the two Pamela Armsteads he was representing were in fact the same person. The committee found this testimony by respondent was not credible, and further found respondent had actual knowledge that he represented Ms. Arm-stead in the two matters contemporaneously. The committee reasoned that the bankruptcy was filed very close in time to the date on which respondent commenced work on the civil action, and moreover, respondent would have been aware of the two matters no later than the date of the August 2006 meeting with the bankruptcy trustee. After this meeting, the trustee sent respondent a packet which would have enabled him to be approved to represent Ms. Armstead in the civil suit; however, respondent knowingly did not seek or receive the bankruptcy court’s approval. Respondent subsequently settled the Arm-stead civil matter, but he deposited the settlement funds into his operating account, as opposed to his client trust account.[2] Respondent did not communicate the fact of the settlement to the bankruptcy trustee. He brought the settlement funds to the trustee in the form of a $13,000 check from his mother’s hnchecking account,[3] evidencing his conversion of the funds as well as commingling. Based on these facts, the committee determined respondent violated Rules 1.15, 3.4(c), 8.4(c), and 8.4(d) in Count V. The committee found the alleged violations of Rules 1.1(a), 1.3, and 5.3 were not proven by clear and convincing evidence.
Given the totality of respondent’s misconduct, the committee determined the applicable baseline sanction in this matter is suspension. The committee found the following factors in aggravation: prior disciplinary offenses, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and substantial experience in the practice of law. The committee found the following factors in mitigation: absence of a dishonest or selfish motive, personal or emotional problems, timely good faith effort to make res *269 titution or to rectify the consequences of the misconduct (in the Armstead matter), imposition of other penalties or sanctions, and remorse.
Under all the circumstances, and considering the nature of the rules violated and the fact that multiple violations are present, the committee recommended respondent be suspended from the practice of law for three years.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

05-DB-085 and 08-DB-065

After reviewing these consolidated matters, the disciplinary board determined that the hearing committees’ factual findings are supported by the evidence and _[_)jtestimony in the record. The board also generally accepted the rule violations found by the committees.
Based on these findings, the board determined respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His conduct was both knowing and intentional, and caused actual and potential harm. Considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is suspension.
The board adopted the aggravating and mitigating factors cited by the committees. After considering this court’s prior jurisprudence regarding similar misconduct, the board recommended respondent be suspended from the practice of law for three years, retroactive to the date of his interim suspension. Additionally, the board recommended respondent make restitution to Brandy Babin for the fee she paid him to file her bankruptcy proceeding. The board also took note of respondent’s admission that he has a substance abuse problem,[4] and in light of that admission, recommended he be evaluated by the Lawyers Assistance Program (“LAP”) and be encouraged to execute a LAP contract. One board member dissented and would recommend disbarment.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an 112independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 688 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this consolidated matter, the record reflects that respondent knowingly disregarded his obligations in numerous bankruptcy filings. He also committed various acts of intentional misconduct, including practicing law after his suspension in bankruptcy court, communicating with a party represented by counsel, mishandling a bankruptcy client’s personal injury settlement funds by failing to deposit them into a trust account, and failing to cooperate with the ODC in its investigation. *270 This conduct caused actual injury to respondent’s clients and the legal system.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Considering respondent’s misconduct as a whole, the applicable baseline sanction is suspension. We find the following mitigating factors are supported by the | ^record: absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, timely good faith effort to make restitution, imposition of other penalties or sanctions, and remorse. The record supports the following aggravating factors: a pattern of misconduct, multiple offenses, vulnerability of the victim, and substantial experience in the practice of law.
Under these circumstances, we agree that a three-year suspension is the appropriate discipline. Accordingly, we will accept the disciplinary board’s recommendation and suspend respondent from the practice of law for three years, retroactive to the date of his interim suspension.[5] We will also order respondent to make full restitution of the fees he charged in the Babin matter.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Frederick A. Blanche, III, Louisiana Bar Roll number 3114, be and he hereby is suspended from the practice of law for three years, retroactive to February 13, 2008, the date of his interim suspension. It is further ordered that respondent pay full restitution of the fees he charged in the Babin matter. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. The committee acknowledged that the bankruptcy court ordered respondent's fee reduced by $250 as a sanction for a filing deficiency, but found this sanction was encompassed within the scope of the misconduct considered in Count I.

. The committee noted the testimony of the bankruptcy trustee that respondent's failure to properly handle the settlement funds did not prejudice Ms. Armstead insofar as her bankruptcy case was concerned.

.The committee noted it is unclear why respondent ultimately returned the amount of money he did, as it does not correspond to either the total settlement or Ms. Armstead’s portion.

. Respondent admitted that he takes methadone and occasionally smokes marijuana. He has also sought treatment for an alcohol problem. However, he insisted that he never abused any drugs or alcohol during the period of the decline of his bankruptcy practice.

. Based on respondent’s history of substance abuse, the board recommended he be evaluated by the Lawyers Assistance Program. We strongly encourage respondent to avail himself of the resources of LAP, and if appropriate, to seek treatment for his problems with drugs and alcohol. Such issues are proper factors for consideration if and when respondent applies for reinstatement after serving his suspension.